**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RODNEY J. QUIGLEY,

        Plaintiff,

    v.

VERIZON WIRELESS, *et al.*,

        Defendants.

_____/

No. C-11-6212 EMC

**ORDER GRANTING IN PART AND DENYING IN PART CONVERGENT DEFENDANTS' MOTION TO DISMISS**

**(Docket No. 46)**

      Previously, the Court granted a motion to dismiss filed by Convergent Resources, Inc. and ER Solutions, Inc. ("ER"), now known as Convergent Outsourcing, Inc. The Court dismissed with prejudice all of the claims asserted by Plaintiff Rodney J. Quigley, except for the claim for violation of the Fair Debt Collection Practices Act ("FDCPA"). The Court gave Mr. Quigley leave to amend that claim. The Court also instructed Mr. Quigley that, if he intended to name any parent companies of ER as defendants, he had to include allegations establishing a basis for parent liability. *See* Docket No. 42 (order). Subsequently, Mr. Quigley filed an amended complaint, in which the main defendants (*i.e.*, the only defendants who have not settled) are as follows: (1) Convergent Resources, Inc.; (2) ER; (3) Convergent Outsourcing, Inc.; (4) Convergent Resources Holdings, LLC; and (5) Silver Oak Services Partners, LLC.[1] These defendants shall be referred to collectively as the Convergent Defendants. Currently pending before the Court is a motion to dismiss filed by the Convergent Defendants.

---

[1] Although five different companies are identified as defendants, there are actually only three defendants – *i.e.*, ER (now known as Convergent Outsourcing, Inc.), Convergent Resources Holdings, LLC (formerly known as Convergent Resources, Inc.), and Silver Oak Services Partners, LLC.

1    Having considered the parties' briefs and the oral argument presented at the hearing on the

2    motion to dismiss, the Court hereby **GRANTS** in part and **DENIES** in part the Convergent

3    Defendants' motion.

4                          I.    <u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

5          In his amended complaint, Mr. Quigley alleges as follows.

6          In August 2008, Mr. Quigley entered into a contract with Cellco Partnership for 24 months

7    of wireless service at a rate of about $160 per month.  *See* FAC ¶ 15.

8          In August 2009, Cellco added an unknown charge of about $20 to Mr. Quigley's bill.  *See*

9    FAC ¶ 17.  Mr. Quigley asked Cellco why he was being assessed this charge.  After Cellco was

10   unable to explain or justify the charge, he told Cellco that he would not pay it.  *See* FAC ¶¶ 18-19.

11         In September 2009, Cellco once again added an unknown charge of about $250 to Mr.

12   Quigley's bill.  *See* FAC ¶ 20.  Mr. Quigley again contacted Cellco about the charge and no

13   explanation was given.  *See* FAC ¶ 20.

14         In October 2009, Cellco sent Mr. Quigley a letter stating that he owed $67.75 for the period

15   August to October 2009.  *See* FAC ¶ 21.  (Presumably, Mr. Quigley had been assessed another $20

16   for the month of October 2009, thus raising the total charge to more than $60.)  In response, Mr.

17   Quigley refused to pay and terminated his contract with Cellco.  *See* FAC ¶ 23.  In addition, Mr.

18   Quigley sent a letter to Cellco in which he, *inter alia*, denied the debt and demanded that it verify its

19   debt claim.  *See* FAC ¶ 24.

20         On February 4, 2010, a collection agency the name of North Shore Agency (not a defendant

21   in the case) sent a letter to Mr. Quigley on Cellco's behalf.  In the letter, North Shore Agency stated

22   that Mr. Quigley owed $467.75.  The additional $400 was imposed as an early termination fee.  *See*

23   FAC ¶ 27.

24         On February 11, 2010, ER first started to take action regarding the alleged debt owed to

25   Cellco.  More specifically, ER called Mr. Quigley's son on this date and asked him for information

26   about Mr. Quigley.  See FAC ¶ 28.  ER called Mr. Quigley's son four additional times thereafter –

27   *i.e.*, March 4, April 5, April 7, and April 8, 2010 – each time asking for the same information.  See

28   FAC ¶¶ 29, 32, 34-35.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    In addition, ER sent Mr. Quigley a letter on April 5, 2010, demanding payment of $551.94,

2    see Compl. ¶ 31, and called Mr. Quigley himself on April 10, 2010.  See Compl. ¶ 36.  Mr. Quigley

3    also alleges that, during this timeframe, ER reported to Experian – on two different occasions – a

4    "false derogatory tradeline" against him.  FAC ¶¶ 30, 33.  According to Mr. Quigley, ER

5    misrepresented to Experian that it was Cellco.  *See* FAC ¶¶ 30, 33.  During the April 10 phone call,

6    Mr. Quigley denied that he owed Cellco money and "gave ER the stark ultimatum to cease all

7    collection activity including the calls to [his] son."  FAC ¶ 36.

8    The next day, April 11, 2010, Mr. Quigley sent a letter to Cellco (doing business as Verizon

9    Wireless), ER, and Convergent Resources, Inc. (as well as other companies), in which he demanded

10   that they stop all "collection activities" and "credit reporting" against him.  FAC, Ex. A (Letter at 2).

11   In addition, Mr. Quigley demanded that they provide him with a "timely 'verification' of any claim

12   that [he] owe[d] anything to anyone."  FAC, Ex. A (Letter at 2).

13   On April 29, 2010, Mr. Quigley received a letter from Cellco (Verizon Wireless), stating that

14       we are able to confirm that the remaining balance of $467.75 is valid
15       and owed.  The charges are composed of your final month of service
    as reflected on your November 16, 2009, statement.  This includes
16       $210.00 in early termination fees, various taxes and surcharges, and a
    past-due balance of $218.21.

17   FAC, Ex. B.  Cellco further informed Mr. Quigley that "this debt has been sold to an outside

18   collections agency, ER Solutions."  FAC, Ex. B.  The letter did not indicate when the debt had been

19   sold.

20   Although Cellco provided the above verification to Mr. Quigley, Mr. Quigley never received

21   a verification from ER or Convergent Resources, Inc.  *See* FAC ¶ 38.[2]  In addition, in spite of Mr.

22   Quigley's demand, ER continued to report false tradelines to credit reporting agencies.  *See* FAC ¶¶

23   40, 48-49.  As of the date of the FAC, false tradelines were reported at least 22 different times.  *See*

24   FAC ¶ 49.

25   _____

26   [2] In this paragraph, Mr. Quigley actually alleges that neither Cellco nor the Convergent
Defendants provided him with a verification.  *See* FAC ¶ 38.  However, Exhibit B attached to the
complaint establishes that Cellco at least did send a verification.  In the complaint, Mr. Quigley tries
27   to discount the verification, stating that Cellco simply sent a "circular letter alleging that the $467.75
in charges were 'proper' because they are supported by past bills . . . the same bills I was
28   questioning."  FAC ¶ 39.

1       On September 16, 2011, Mr. Quigley received a letter from a company hired by the

2  Convergent Defendants (*i.e.*, CBC), in which the company offered to settle the debt claim for

3  $140.33.  *See* FAC ¶ 44.  It appears that Mr. Quigley never agreed to make a payment of any kind to

4  the Convergent Defendants.

5       Based on, *inter alia*, the above allegations, Mr. Quigley has brought various FDCPA claims

6  against the Convergent Defendants.  In addition, Mr. Quigley has included in his amended complaint

7  claims for violation of California and Arizona state law – even though the Court's order allowed him

8  to amend only his FDCPA claim.

**II.   DISCUSSION**

A.   Legal Standard

       The Convergent Defendants have moved to dismiss the complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal

sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

1995).  In considering such a motion, a court must take all allegations of material fact as true and

construe them in the light most favorable to the nonmoving party, although "conclusory allegations

of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v.*

*Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual

allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer

possibility that a defendant acted unlawfully."  *Id.* at 1949.

B.   Parent Liability

       The Court addresses first the Convergent Defendants' argument that the parent companies of

ER – *i.e.*, Convergent Resources Holdings LLC and Silver Oak Services Partners LLC – should be

dismissed from the case because Mr. Quigley has failed to adequately allege a basis for parent

liability.

**United States District Court**
For the Northern District of California

1    Based on the complaint, it appears that Mr. Quigley seeks to hold the parent companies liable

2    on an alter ego theory.  He alleges, for example, that "ER's day-to-day operations are closely

3    controlled and managed by Silver Oak Services Partners and/or its immediate parent company

4    Convergent Resources Holdings, LLC."  FAC ¶ 5(a).  He also alleges that the "day-to-day

5    operations [of Convergent Resources Holdings, LLC] are supervised and closely managed and

6    controlled by Silver Oak Services Partners LLC."  FAC ¶ 5(b).

7    In determining whether alter ego liability applies, a federal court applies the law of the forum

8    state.  *See Schwarzkopf v. Brimes*, 626 F.3d 1032, 1037 (9th Cir. 2010) (applying California alter

9    ego law in a federal bankruptcy case); *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th

10   Cir. 1993) ("apply[ing] the law of the forum state in determining whether a corporation is an alter

11   ego of the taxpayer").

12              California recognizes alter ego liability where two conditions
                are met:  First, where "there is such a unity of interest and ownership
13              that the individuality, or separateness, of the said person and
                corporation has ceased;" and, second, where "adherence to the fiction
14              of the separate existence of the corporation would . . . sanction a fraud
                or promote injustice."
15

16   *Schwarzkopf*, 626 F.3d at 1037.  "Factors suggesting an alter ego relationship include the

17   commingling of funds and other assets, the failure to segregate funds of separate entities, the

18   disregard of legal formalities, or the manipulation of assets between entities so as to concentrate the

19   assets in one and the liabilities in another."  *FDIC v. CoreLogic Valuation Servs., LLC*, No. SA CV

20   11-0704 DOC (ANx), 2011 U.S. Dist. LEXIS 131956, at *26 (C.D. Cal. Nov. 14, 2011).

21   At least two California district courts have held that broad allegations of control are not

22   enough to establish alter ego liability because they are too conclusory.  In *Corelogic*, for example,

23   the district court held that the FDIC failed to adequately allege alter ego liability where, *inter alia*, it

24   simply "aver[red] in conclusory language that CoreLogic,  First American Information Services, and

25   First American Solutions directed and controlled EA's actions with regard to the appraisal services

26   provided by EA to WaMu."  *Id.* at *27.  The court also noted that the allegations did not establish

27   that "an inequitable result would result from treatment of the corporation [EA] as a sole actor."  *Id.*

28   at *28.

United States District Court
For the Northern District of California

1    Similarly, in *United States EEOC v. American Laser Ctrs. LLC*, No.

2    1:09-CV-2247-AWI-DLB, 2010 U.S. Dist. LEXIS 82851 (E.D. Cal. Aug. 13, 2010), the district

3    court determined that the EEOC failed to adequately allege alter ego liability based on allegations

4    that each defendant "acted 'as a successor, alter ego, joint employer, integrated enterprise, agent,

5    employee....' or 'under the direction and control of the others.'" *Id.* at *13.  The court stated that

6    this was "merely a conclusory allegation." *Id.*

7    District courts outside of California have rendered similar opinions.  *See, e.g.*, *Holzli v.*

8    *Deluca Enters.*, No. 11-06148 (JBS/KMW), 2012 U.S. Dist. LEXIS 38880, at *7 (D.N.J. Mar. 21,

9    2012) (stating that "'bare-boned allegations of undercapitalization and common control and/or

10   management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6)

11   motion'"; adding that "'parroting of the alter-ego factors alone is insufficient to satisfy the required

12   pleading standards'"); *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799

13   (D. Md. 2011) (noting that, "[a]side from making broad assertions regarding Cristal's 'control over

14   Millennium's marketing, purchasing, pricing, management, and/or operating policies,' and Cristal's

15   'role in approving Millennium's significant business decisions, Plaintiffs provide no facts

16   whatsoever in support of these claims[;] [u]nder *Twombly* and *Iqbal*, Plaintiffs' conclusory

17   allegations are not entitled to the presumption of truth"); *Apex Mar. Co. v. OHM Enters.*, No. 10

18   Civ. 8119 (SAS), 2011 U.S. Dist. LEXIS 35707, at *14-15 (S.D.N.Y. Mar. 30, 2011) (noting that,

19   "[a]lthough the domination and control prong of the alter ego theory need only comply with Rule

20   8(a)'s liberal pleading standard, conclusory statements are insufficient"; "[h]ere, the Complaint lacks

21   any factual allegations supporting the conclusion that Amin and Bedi exercised domination and

22   control over OHM or STARCO [–] "[t]he unadorned invocation of dominion and control is simply

23   not enough'"); *see also Sunlight Elec. Contr. Co. v. Turchi*, No. 08-5834, 2011 U.S. Dist. LEXIS

24   104192, at *11 n.6 (E.D. Pa. Sept. 13, 2011) (noting that "'[l]egal conclusions masquerading as

25   factual conclusions will not suffice to circumvent a motion to dismiss,' so we need not credit such

26   conclusory allegations in ruling on defendants' motion").

27   Consistent with the above authority, the Court concludes that Mr. Quigley's broad

28   allegations of control, standing alone, are not sufficient to meet the Rule 8 standard laid out in

*Twombly* and *Iqbal*.  Therefore, the Court dismisses all claims asserted against the parent companies.
The dismissal is without prejudice.

C.      FDCPA Claim – §§ 1692b(3) and 1692c(b)

In his complaint, Mr. Quigley pleads two FDCPA claims based on ER's five
communications with his son.  Those claims assert violations of 15 U.S.C. §§ 1692b(3) and
1692c(b).

1.      Section 1692b(3)

Section 1692(b)(3) provides that

> [a]ny debt collector communicating with any person other than the
> consumer for the purpose of acquiring location information about the
> consumer shall . . . not communicate with any such person more than
> once unless requested to do so by such person or unless the debt
> collector reasonably believes that the earlier response of such person is
> erroneous or incomplete and that such person now has correct or
> complete location information.

15 U.S.C. § 1692b(3).  "Location information" is defined in 15 U.S.C. § 1692a(7) as "a consumer's
place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. §
1692a(7).  In his complaint, Mr. Quigley alleges that ER knew his "physical location, mailing
address and telephone number."  FAC ¶ 59.

At the hearing, ER argued that physical location and mailing address does not necessarily
translate to place of abode, let alone place of employment.  ER also pointed out that the statute
requires the telephone number at the place of abode.  In response, Mr. Quigley indicated that he was
willing to amend his complaint a second time to make clear that ER knew his location information
as defined by § 1692a(7) (*i.e.*, his place of abode and his telephone number at such place, as well as
his place of employment).  Accordingly, the Court dismisses the § 1692b(3) claim but gives Mr.
Quigley leave to amend to make clear that, at all times when ER was communicating with his son, it
knew of his place of abode, his telephone number at such place, and his place of employment.  Such
allegations will suffice to state a claim under § 1692(b)(3).

///

///

///

7

2.      Section 1692c(b)

Section 1692c covers communications in connection with debt collection generally. Subsection (b) covers communications with third parties specifically.  The statute provides as follows:

> *Except as provided in section 804 [15 U.S.C. § 1692b],* without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis added).

In the instant case, the critical language is the language italicized above.  Essentially, § 1692c(b) prohibits communications with third parties *except* as provided in § 1692b – and, as noted above, § 1692b(3) allows for communication with a third party to obtain location information.  The § 1692c(b) claim, therefore, rises or falls with the § 1692b(3) claim.  Accordingly, the Court dismisses the § 1692c(b) claim but, as above, gives Mr. Quigley leave to amend to make clear that, at all times when ER was communicating with his son, it knew of his place of abode, his telephone number at such place, and his place of employment.

D.      FDCPA Claim – § 1692e(2), (8)

Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  *Id.* § 1692e.  Section 1692e further provides that the following conduct is a violation of the statute:

> (2)     The false representation of –
>
> > (A)     the character, amount, or legal status of any debt; or
> >
> > (B)     any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> (8)     Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   *Id.* § 1692e(2), (8).

2        Although not entirely clear, it appears that Mr. Quigley's § 1692e(2) claim is based on the

3   allegation that ER was asserting a debt even though it knew that the Cellco charges were actually

4   improper. *See* FAC ¶ 75 (alleging that "[t]he un-explained charges that appears on my Cellco bills

5   for August, September and October 2009 are charges that Cellco and Convergent knew to be

6   improper and illegal under Cellco's service contract with me"). As for the § 1692e(8) claim, that

7   appears to be based on the allegation that ER reported a false tradeline to a credit reporting agency

8   multiple times. *See* FAC ¶ 77.

9        As the Convergent Defendants point out, Mr. Quigley's § 1692e(2) claim is based on ER

10  allegedly knowing that the Cellco charges were improper. The problem for Mr. Quigley is that he

11  has simply alleged in conclusory terms that ER knew this fact with providing any supporting factual

12  allegations. This FDCPA claim, therefore, is dismissed but without prejudice. Mr. Quigley has

13  leave to amend to include factual allegations establishing *how* ER knew that the Cellco charges were

14  improper. Simply because ER purchased the debt from Cellco is, in and of itself, insufficient to

15  establish that ER knew that the charges were improper.

16       As for the § 1692e(8) claim, it too is problematic, at least in part. To the extent Mr. Quigley

17  asserts a § 1692e(8) claim based on ER's reporting a false tradeline to a credit reporting agency

18  multiple times, it suffers from the same flaw as the § 1692e(2) claim – *i.e.*, Mr. Quigley has failed to

19  allege *how* ER knew that he Cellco charges were improper.

20       Mr. Quigley, however, also indicates that ER violated § 1692e(8) in two other ways: (1)

21  because it failed to report to the credit reporting agencies that Mr. Quigley disputed the debt, and (2)

22  because ER misrepresented to the credit reporting agencies that Cellco was reporting the debt when

23  in fact ER was doing so. *See* Opp'n at 8. The first claim appears to be viable. *See, e.g.*, *Wilhelm v.*

24  *Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) (taking note of 1988 Staff Commentary on FDCPA,

25  which states that, "'[i]f a debt collector knows that a debt is disputed by the consumer . . . and

26  reports it to a credit bureau, he must report it as disputed'").[3] As for the second claim, it too appears

27          [3] In *Mellinger v. Midwestern Audit Service*, No. 11-CV-11326, 2012 U.S. Dist. LEXIS

28  15325 (E.D. Mich. Feb. 8, 2012), a district court held that a defendant is entitled to presume that a
debt is valid and does not have an obligation to communicate that the debt is disputed when

**United States District Court**
For the Northern District of California

1   viable – to the extent it is based on ER's reporting the debt *after* it had purchased the debt from

2   Cellco.[4]  However, the Court finds that the complaint, as currently pled, does not allege this

3   specifically.  Nor does the complaint allege that ER did more than simply indicate to the agencies

4   that the underlying debt was originally owed to Cellco.  Accordingly, the Court concludes that, as

5   the complaint currently stands, Mr. Quigley has only stated a claim for relief based on § 1692e(8) to

6   the extent he alleges that ER failed to report to the credit reporting agencies that Mr. Quigley

7   disputed the debt.  The other parts of the § 1692e(8) claim are dismissed with leave to amend.

8   E.   <u>FDCPA Claim – § 1692g</u>

9        Section 1692g deals with validation of debts.  It provides in relevant part as follows:

10       (a)   Notice of debt; contents.  Within five days after the initial
             communication with a consumer in connection with the
11           collection of any debt, a debt collector shall, unless the
             following information is contained in the initial
12           communication or the consumer has paid the debt, send the
             consumer a written notice containing –
13
             (1)   the amount of the debt;
14
             (2)   the name of the creditor to whom the debt is owed;
15
             (3)   a statement that unless the consumer, within thirty days
16                 after receipt of the notice, disputes the validity of the
                   debt, or any portion thereof, the debt will be assumed to
17                 be valid by the debt collector;

18           (4)   a statement that if the consumer notifies the debt
                   collector in writing within the thirty-day period that the
19                 debt, or any portion thereof, is disputed, *the debt
                   collector will obtain verification of the debt or a copy
20                 of a judgment against the consumer and a copy of such
                   verification or judgment will be mailed to the consumer
21                 by the debt collector*; and

22           (5)   a statement that, upon the consumer's written request
                   within the thirty-day period, the debt collector will
23                 provide the consumer with the name and address of the
                   original creditor, if different from the current creditor.
24
         (b)   Disputed debts.  If the consumer notifies the debt collector in
25             writing within the thirty-day period described in subsection (a)
               that the debt, or any portion thereof, is disputed, or that the
26
    ───────────────────
27  reporting it to credit agencies if the plaintiff does not dispute the debt within the thirty days required
    by 15 U.S.C. § 1692g(a)(3).

28       [4]  As noted above, it is not clear when the purchase took place.

United States District Court

For the Northern District of California

consumer requests the name and address of the original
creditor, the debt collector shall cease collection of the debt, or
any disputed portion thereof, *until the debt collector obtains
verification of the debt or a copy of a judgment, or the name
and address of the original creditor, and a copy of such
verification or judgment, or name and address of the original
creditor, is mailed to the consumer by the debt collector.*
Collection activities and communications that do not otherwise
violate this title may continue during the 30-day period
referred to in subsection (a) unless the consumer has notified
the debt collector in writing that the debt, or any portion of the
debt, is disputed or that the consumer requests the name and
address of the original creditor. Any collection activities and
communication during the 30-day period may not overshadow
or be inconsistent with the disclosure of the consumer's right
to dispute the debt or request the name and address of the
original creditor.

15 U.S.C. § 1692g(a)-(b) (emphasis added).

In his complaint, Mr. Quigley alleges that ER violated § 1692g by failing to respond to his

request for verification of the debt and thereafter continuing to attempt to collect. *See* FAC ¶ 76.

By alleging the above, Mr. Quigley has adequately pled a claim for relief – in particular, a

claim pursuant to § 1692g(b). In their motion to dismiss, the Convergent Defendants focus on

compliance with § 1692g(a), *see* Mot. at 13 (stating that "there was no requirement for ER[] to send

a debt validation notice because ER[] had *already provided* the requisite notices to plaintiff")

(emphasis in original), but that is beside the point because Mr. Quigley's claim seems to be

predicated on subsection (b), not (a). The Court assumes Mr. Quigley is asserting a claim only

under § 1692(g)(b) and denies the motion to dismiss as to that claim.[5]

F.      FDCPA Claim – § 1692f

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means

to collect or attempt to collect any debt." *Id.* § 1692f. Although not entirely clear, Mr. Quigley

---

[5] That being said, the Court does take note that, even though ER did not respond to Mr.
Quigley's request for a verification (at least as alleged), Cellco did (although Mr. Quigley claims to
the contrary). Given Cellco's verification letter of April 29, 2010, *see* FAC, Ex. B (letter), any
actual damage to Mr. Quigley as a result of ER's failure to respond may well amount to nothing.
For similar reasons, any request for statutory damages may be problematic. *See* 15 U.S.C. §
1692k(a) (providing that a debt collector who fails to comply is liable to the person for "any actual
damage sustained by such person as a result of such failure" and "such additional damages as the
court may allow, but not exceeding $1,000"); *id.* § 1692k(b) (providing that factors for a court to
consider include "the frequency and persistence of noncompliance by the debt collector, the nature
of such noncompliance, and the extent to which such noncompliance was intentional"). At this
juncture, however, the Court makes no concrete ruling on damages.

United States District Court

For the Northern District of California

1  seems to making a claim pursuant to § 1692f based on (1) ER's five telephone calls to his son and

2  (2) ER's reporting of a false tradeline to a credit reporting agency on multiple occasions.  As the

3  Convergent Defendants point out, this claim is largely redundant of other FDCPA claims as

4  discussed above.  Therefore, the Court dismisses this claim as duplicative.  *See, e.g.*, *Wood v.*

5  *Midland Credit Mgmt.*, No. CV 05-3881 FMC (MANx), 2005 U.S. Dist. LEXIS 31923, at *5-6

6  (C.D. Cal. July 29, 2005) (noting that the plaintiff failed to "allege[] that the Defendant's actions

7  violated any specific subsection of § 1692f"; adding that, to the extent the plaintiff "allege[d] that

8  the Defendant has violated § 1692f by failing to provide the Plaintiff, upon written request, with

9  verification of the validity of the debt, and persisting in attempts to collect the debt[,] . . . the proper

10  vehicle for this type of claim is § 1692g(b), and not § 1692f" and so dismissing the § 1692f claim as

11  "redundant").

12  G.    Violation of the California Rosenthal Act

13        As noted above, the Court allowed Mr. Quigley to amend his FDCPA claim but, in the

14  amended complaint, he included not only FDCPA claims but also a claim pursuant to the California

15  Rosenthal Act.  *See* Cal. Civ. Code § 1788 *et seq.*  Although not entirely clear, Mr. Quigley seems to

16  be making a Rosenthal Act claim based on (1) ER's five telephone calls to his son and (2) ER's

17  reporting of a false tradeline to a credit reporting agency on multiple occasions.

18        The problem for Mr. Rosenthal is that he has not pinpointed how this conduct constitutes a

19  violation of the Rosenthal Act.  However, the Act does require a debt collector to comply with the

20  FDCPA (§§ 1692b to 1692j), *see* Cal. Civ. Code § 1788.17 (noting that failure to comply with the

21  FDCPA provisions shall subject a debt collector to FDCPA remedies in § 1692k), and not all the

22  FDCPA claims are being dismissed.  The Court thus denies the motion to dismiss the Rosenthal Act

23  claim to the extent any of the FDCPA claims survive dismissal.

24  H.    Violation of Arizona Law

25        Finally, Mr. Quigley's Arizona law claims (which the Court did not give Mr. Quigley leave

26  to add in its last order) are based on one statute and one regulation, namely Arizona Revised Statute

27  § 32-1053(3) and Arizona Administrative Code R20-4-1511.

28

The statute-based claim is dismissed because, as the Convergent Defendants argue, there is nothing about the statute to indicate that it gives right to a private right of action. The statute provides in relevant part that "[t]he superintendent may deny a license to a person or suspend or revoke a license . . . if the superintendent finds that an applicant or licensee [*e.g.*] [h]as violated any applicable law, rule or order." Ariz. Rev. Stat. § 32-1053(3). Nor does Mr. Quigley cite any case holding that there is a private right of action under the statute.

As for the regulation-based claim, Arizona Administrative Code R20-4-1511does bar a collection agency from "us[ing] unauthorized or oppressive tactics designed to harass any person to pay a debt." Ariz. Admin. Code R20-4-1511. However, the regulation specifies that a collection agency who violates the regulation is subject to penalties listed in Arizona Revised Statute § 32-1056(B) – none of which is civil damages. *See* Ariz. Rev. Stat. § 32-1056(B) (referring to revocation of a license and a class 1 misdemeanor). While the administrative code also states that a debt collector is further subject to "other liabilities imposed under any other provision of law," Ariz. Admin. Code R20-4-1511, Mr. Quigley has not pointed to another provision of law which provides for civil damages for the conduct at issue.

Accordingly, the Arizona-based claims are dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, the Convergent Defendants' motion to dismiss is granted in part and denied in part. More specifically, the Court rules as follows.

(1)     All claims against the parent companies of ER are dismissed without prejudice.

(2)     The motion to dismiss the §§ 1692b(3) and 1692c(b) claims is granted. However, Mr. Quigley has leave to amend the claim to make clear that, at all times when ER was communicating with his son, it knew of his place of abode, his telephone number at such place, and his place of employment.

(3)     The motion to dismiss the § 1692e(2) claim is granted. However, Mr. Quigley has leave to amend to include factual allegations establishing *how* ER knew that the Cellco charges were improper.

United States District Court
For the Northern District of California

(4)     The motion to dismiss the § 1692e(8) claim is granted in part and denied in part.  The claim is dismissed to the extent Mr. Quigley asserts a claim based on ER's reporting a false tradeline to a credit reporting agency multiple times.  As noted above, Mr. Quigley does not allege *how* ER knew that the Cellco charges were improper.  The § 1692e(8) claim is also dismissed to the extent Mr. Quigley asserts a claim that ER misrepresented to the credit reporting agencies that Cellco was reporting the debt when in fact ER was doing so.  The complaint does not clearly allege that ER reported the debt *after* it had purchased the debt from Cellco, nor does the complaint allege that ER did more than simply indicate to the agencies that the underlying debt was originally owed to Cellco.  However, the § 1692e(8) is *not* dismissed to the extent Mr. Quigley alleges that ER failed to report to the credit reporting agencies that Mr. Quigley disputed the debt.  To the extent the Court has dismissed parts of the § 1692e(8) claim, Mr. Quigley has leave to amend to address the deficiencies above.

(5)     The motion to dismiss the § 1692g(b) claim is denied.  The Court assumes Mr. Quigley is not asserting a claim under § 1692g(a).

(6)     The motion to dismiss the § 1692f claim is granted.  The dismissal is without prejudice.

(7)     The motion to dismiss the Rosenthal Act claim is granted in part and denied in part.  The Rosenthal claim rises or falls with the FDCPA claims.

(8)     The motion to dismiss the Arizona-based claims is granted.  The dismissal is with prejudice.

///

///

///

///

///

///

///

///

///

///

14

1       With respect to those claims where the Court has expressly allowed an amendment, Mr.

2 Quigley must file an amended complaint within thirty (30) days of the date of this order.  No

3 amendments, except for those expressly permitted by this order, are allowed.  The Court emphasizes

4 that, pursuant to Federal Rule of Civil Procedure 11, Mr. Quigley must have a good faith basis for

5 any factual allegation that he makes in his amendment or he risks being subjected to sanctions.

6       This order disposes of Docket No. 46.

7

8       IT IS SO ORDERED.

9

10 Dated:  May 30, 2012

11

12 _____
EDWARD M. CHEN
United States District Judge